**Elizabeth A. REESE, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 92–93T.**

United States Court of Federal Claims.

July 29, 1993.

David Shane Smith, Richmond, VA, for plaintiff.

Elizabeth D. DePriest, with whom were Acting Asst. Atty. Gen., Michael L. Paup and Mildred L. Seidman, Washington, DC, for defendant.

## OPINION

ANDEWELT, Judge.

In this federal tax action, plaintiff, Elizabeth A. Reese, seeks a refund of $32,580

for taxes she allegedly overpaid for tax year 1987. This action is presently before the court on cross-motions for summary judgment. The motions present the issue of whether punitive damages received in settlement of a civil litigation must be included in "gross income" subject to federal income tax under Sections 61 and 104(a)(2) of the Internal Revenue Code (the Code), 26 U.S.C. §§ 61 and 104(a)(2). Although Congress addressed the taxation of punitive damages in amendments to Section 104(a)(2) enacted in 1989, Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7641, 103 Stat. 2106, 2379 (1989), *see* n. 1, *infra,* that legislation was not retroactive. Hence, this court must resolve plaintiff's 1987 tax liability under then-existing law. For the reasons set forth below, plaintiff's motion for summary judgment is denied, and defendant's cross-motion is granted.

## I.

The punitive damages in issue resulted from a suit brought by plaintiff against her former employer in the United States District Court for the District of Columbia. In that suit, plaintiff alleged sex discrimination and sexual harassment, intentional infliction of emotional distress, a common law tort, and breach of contract. After trial, the jury awarded plaintiff a total of $250,000, consisting of $70,000 in compensatory damages and $70,000 in punitive damages on the claim of sex discrimination and sexual harassment, $70,000 in compensatory damages and $30,000 in punitive damages on the claim of intentional infliction of emotional distress, and $10,000 for breach of contract. After the jury verdict, plaintiff sought an additional $239,437.01 in costs and attorneys' fees. The parties entered into a settlement agreement pursuant to which plaintiff received a total of $489,-437.01, the sum of the jury award and the costs and fees plaintiff had sought.

In calculating her 1987 federal tax liability, plaintiff included the $100,000 punitive damage award as part of her "gross income" subject to federal income tax. Thereafter, however, plaintiff filed an amended 1987 tax return in which she excluded the $100,000 punitive damage award from her taxable income and sought a refund of $32,580. Plaintiff contended that the punitive damage award was not subject to taxation because it fell within the exclusion from "gross income" contained in 26 U.S.C. § 104(a)(2). After the Internal Revenue Service (IRS) denied plaintiff any refund, plaintiff filed the instant action. The parties then filed cross-motions for summary judgment. Because there are no material facts in dispute, this action properly can be resolved on summary judgment. RCFC 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II.

Section 61(a) of the Code defines "gross income" as "all income from whatever source derived." Section 104(a) contains exceptions to Section 61's broad definition of gross income. For tax year 1987, Section 104 provided, in pertinent part:

§ 104. Compensation for injuries and sickness.

(a) **In general.**—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, *gross income does not include—*

\* \* \* \* \* \*

(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness....

(Emphasis added.) [1]

In various revenue rulings, the IRS periodically has changed its position on wheth-

---

1. In 1989, Congress amended Section 104(a) to provide that "Paragraph (2) [*i.e.,* Section 104(a)(2) ] shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7641, 103 Stat. 2106, 2379 (1989). But, as explained above, that legislation was not retroactive.

er the exception contained in Section 104(a)(2) encompasses punitive damages secured in a suit brought for personal injuries. In 1958, the IRS. took the position that punitive damages received in settlement of a libel suit for injury to personal reputation fell outside of the Section 104(a)(2) exclusion, and hence, constituted taxable income. Rev.Rul. 58–418, 1958–2 C.B. 18. The IRS reversed that position in 1975, however, and stated that "under Section 104(a)(2), any damages, whether compensatory or punitive, received on account of personal injuries or sickness are excludable from gross income." Rev.Rul. 75–45, 1975–1 C.B. 47. In 1984, the IRS again reversed its position by declaring that a taxpayer is obliged to include in gross income the payments he or she receives for a release from liability under a wrongful death act which provides exclusively for payment of punitive damages. Rev.Rul. 84–108, 1984–2 C.B. 32.

The courts also have struggled in interpreting Section 104(a)(2) and have failed to adopt a uniform interpretation. In *Miller v. Commissioner,* 93 T.C. 330, 1989 WL 104238 (1989) (*Miller I*), the Tax Court, over a dissent, concluded that Section 104(a)(2) obliges the exclusion from gross income of both punitive and compensatory damages awarded in personal injury suits. The court reasoned that "the plain meaning of the broad statutory language [of Section 104(a)(2) ] simply does not permit a distinction between punitive and compensatory damages." *Id.* at 338.

In *Commissioner v. Miller,* 914 F.2d 586 (4th Cir.1990) (*Miller II*), *rev'g Miller I,* 93 T.C. 330, 1989 WL 104238 the Court of Appeals for the Fourth Circuit interpreted Section 104(a)(2) differently and rejected the Tax Court's conclusion that Section 104(a)(2) was subject to a "plain meaning" interpretation. The Fourth Circuit concluded instead that the wording of Section 104(a)(2) is inherently ambiguous. The Fourth Circuit agreed with the Tax Court that the phrase "damages received . . . on account of personal injuries" indicates a causal relationship between the personal injuries and the damages received, but the Fourth Circuit concluded that Section 104(a)(2) is ambiguous as to the nature of that causal relationship and could be interpreted in either of two ways. *Miller II,* 914 F.2d at 589–90.

The first possible interpretation, which the Fourth Circuit characterized as involving "but-for" causation, would classify damages as received "on account of" personal injuries whenever a showing of personal injury is a legal prerequisite for the receipt of those damages, *i.e.,* the damages would be excluded from "gross income" under Section 104(a)(2) if there would have been no damage award *but for* the personal injuries. Under this first interpretation, the punitive damages awarded to the *Miller I* plaintiff would qualify for the Section 104(a)(2) exclusion because under the applicable Maryland tort law, an injury justifying compensatory damages is a necessary prerequisite to an award of punitive damages. *Id.* at 589 n. 6.

The second possible interpretation of Section 104(a)(2), which the Fourth Circuit characterized as involving "sufficient" causation, would classify damages as received "on account of" personal injuries only where the claimant's proof of a compensable injury in and of itself is sufficient to entitle the claimant to the damages. Under this interpretation, the punitive damages awarded to the *Miller I* plaintiff would not be excluded from "gross income" under Section 104(a)(2) because under Maryland law, a compensable personal injury alone is not sufficient to support an award of punitive damages. Rather, to receive punitive damages, a claimant must show egregious conduct by the defendant. *Id.* at 589. Thus, under this alternative interpretation, the punitive damages awarded to the *Miller I* plaintiff would not be encompassed within the Section 104(a)(2) exclusion because the damages were not received "on account of" personal injuries, but rather, in significant part, were received "on account of" the egregious conduct that accompanied the infliction of the personal injuries.

In *Miller II,* after concluding that the wording of Section 104(a)(2) is ambiguous,

the Fourth Circuit resorted to extrinsic aids to interpretation to define the parameters of Section 104(a)(2). Ultimately, the court concluded, in effect, that the punitive damages in issue should not be deemed to have been received "on account of" personal injuries because those damages were not intended to compensate the plaintiff for losses resulting from those personal injuries. The Fourth Circuit explained: "[The punitive] damages are a 'windfall,' *see Cheek [v. J.B.G. Properties, Inc.]*, 28 Md.App. [29,] 34, 344 A.2d [180,] 184 [ (1975) ], being 'over and above any award of compensatory damages,' *see Exxon [Corp. v. Yarema]*, 69 Md.App. [124,] 137, 516 A.2d [990,] 997 [ (1986), *cert. denied*, 309 Md. 47, 522 A.2d 392 (1977) ], and therefore, fall beyond § 104(a)(2)'s reach." *Miller II*, 914 F.2d at 591.

The Tax Court subsequently revisited the issue of Section 104(a)(2)'s statutory interpretation in *Horton v. Commissioner*, 100 T.C. No. 8, 1993 WL 28557 (Feb. 9, 1993), a suit brought by a taxpayer outside of the Fourth Circuit. In *Horton*, the Tax Court rejected the Fourth Circuit's analysis. Purporting to find support in the post-*Miller II* Supreme Court decision in *United States v. Burke*, —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), the Tax Court, over a three-judge dissent, adhered to its interpretation of Section 104(a)(2) enunciated in *Miller I*.

### III.

■ The proper place for a court to commence its analysis of the scope of a statute is the wording of the statute. *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1365 (Fed.Cir.1983). Herein, an analysis of the wording of Section 104(a)(2) leads this court to conclude that Section 104(a)(2) is inherently ambiguous and therefore that a taxpayer's liability thereunder cannot be resolved based upon a "plain meaning" interpretation of the statute.

In *Miller I*, the Tax Court concluded that Section 104(a)(2) is capable of a "plain meaning" interpretation based on Section 104(a)(2)'s use of the phrases "any damages" and "on account of." The Tax Court

correctly noted that the phrase "any damages" is synonymous with the phrase "all damages." But Section 104(a)(2)'s exclusion clearly does not encompass all possible damages because it also contains the express limitation that the damages received must be received "on account of ... personal injuries." Therefore, even if an award qualifies as "any damages," the award is not encompassed within the exclusion in Section 104(a)(2) unless those damages also were received "on account of ... personal injuries."

Turning to the phrase "on account of," the Tax Court cited *Webster's Third New International Dictionary* (1981), which defines "on account of" as follows: "For the sake of," "by reason of," or "because of." *Miller I*, 93 T.C. at 339. But these definitions hardly seem to render Section 104(a)(2) unambiguous. Consider, for example, the definition "for the sake of." Under state law, punitive damages are often classified as distinct from damages awarded for compensation for the underlying injury. *See, e.g., Exxon Corp. v. Yarema*, 69 Md.App. 124, 516 A.2d 990, 997 (1986), *cert. denied*, 309 Md. 47, 522 A.2d 392 (1987); *Sharapata v. Islip*, 56 N.Y.2d 332, 452 N.Y.S.2d 347, 437 N.E.2d 1104 (1982). The Restatement of Torts Second adopts such a distinction in defining punitive damages as "damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct." *Restatement (Second) of Torts* § 908 (1979). To the extent punitive damages do not compensate for personal injuries but rather are directed at punishing past conduct and deterring future conduct, punitive damages hardly would seem to be awarded "for the sake of" personal injuries. Rather, such damages would seem to be awarded "for the sake of" punishment or deterrence.

Moreover, Congress first excluded from taxation "damages received ... on account of ... injuries" when Congress enacted a predecessor to Section 104(a)(2) in 1918, long before the 1981 publication of *Webster's Third New International Dictio-*

*nary.*[2] With respect to the plain meaning of the phrase "on account of" at the time Section 213(b)(6) was enacted, *The Century Dictionary and Cyclopedia* (1911) contains the following definition of "account": "Reason or consideration; ground: used with *on:* as *on* all *accounts; on* every *account; on account* of" (emphasis in original). Using this definition, a respectable argument certainly can be made that a reference in 1918 to "damages received ... on account of ... injuries" was not intended to encompass noncompensatory punitive damages because the "reason" or "ground" for such damages was not the underlying personal injuries but rather the punishment of past conduct and the deterrence of future conduct.[3]

## IV.

■ Because the scope of Section 104(a)(2) cannot be resolved by reference to the plain meaning of the statutory words, this court must resort to alternative bases for statutory interpretation. Upon review, the court finds three substantial reasons for interpreting Section 104(a)(2) as not excluding from "gross income" punitive damages awarded to deter and punish undesirable conduct rather than to compensate an individual for injuries sustained. These three reasons, when viewed together, are compelling.

The first reason to subject noncompensatory punitive damages to taxation is that such taxation is consistent with the general rule of construction evolved in Supreme Court precedent that the definition of "gross income" contained in Section 61 should be construed broadly and exceptions to Section 61 should be construed narrowly. In *Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949), the Supreme Court described this general rule as follows:

2. Section 213(b)(6) of the Revenue Act of 1918 excluded from income "damages received ... on account of [personal] injuries." Ch. 18, 40 Stat. 1057, 1066 (1919). The Internal Revenue Code of 1954 incorporated this general language into Section 104(a)(2), ch. 1, 68A Stat. 30, and that language has been retained in Section

The income taxed is described in sweeping terms and should be broadly construed in accordance with an obvious purpose to tax income comprehensively. The exemptions, on the other hand, are specifically stated and should be construed with restraint in the light of the same policy.

*See also Helvering v. Clifford,* 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940) (Congress sought in Section 61 to exert "the full measure of its taxing power").

Herein, there can be no dispute that absent a statutory exception, the punitive damages in issue would fall within the scope of Section 61. In *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955), the Supreme Court explained that punitive damages awarded in an antitrust suit were "accessions to wealth" and within the scope of Section 61. The Court explained:

Here, we have instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion. The mere fact that the payments were extracted from the wrongdoers as punishment for unlawful conduct cannot detract from their character as taxable income to the recipients.

In the instant case, as described above, this court is faced with alternative interpretations of the Section 104(a)(2) exception to Section 61. One interpretation reads Section 104(a)(2) broadly so as to exclude from taxation "accessions to wealth" in the form of noncompensatory punitive damages awarded in tort actions. The other interpretation reads Section 104(a)(2) narrowly so as to provide for taxation of such damages. The general rule of construction that exceptions to Section 61 should be interpreted narrowly would favor the narrow interpretation of Section 104(a)(2).

104(a)(2) throughout subsequent amendments to the Code.

3. *The Oxford English Dictionary* (2d ed. 1989) also includes "in consideration of" as a definition of "on account of."

Second, an interpretation of Section 104(a)(2) that renders noncompensatory punitive damages subject to taxation is consistent with the title of Section 104 and the other provisions in Section 104(a). Section 104 is entitled *"Compensation* for injuries or sickness" (emphasis added), and there is no suggestion therein that Congress intended Section 104 to affect the taxation of payments that are not *compensatory* of the injuries or sickness suffered. Moreover, consistent with Section 104's title, each of the other provisions in Section 104(a), including Section 104(a)(1) and (3)–(5), cover only payments that generally are received as compensation for financial loss resulting from injury or sickness. In this regard, Section 104(a)(1) covers amounts received under workmen's compensation, Section 104(a)(3) covers amounts received through accident or health insurance, Section 104(a)(4) covers amounts received as a pension, annuity, or similar allowance for personal injuries, and Section 104(a)(5) covers amounts received as disability income.

█ When interpreting ambiguous statutory tax provisions, it is appropriate to analyze other related tax provisions and seek an interpretation consistent with the tax statute viewed as an "organic whole." *See Lewyt Corp. v. Commissioner,* 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029 (1955); *United States v. Sheahan,* 323 F.2d 383, 385 (5th Cir.1963). Herein, plaintiff's proposed broad interpretation of Section 104(a)(2) as reaching noncompensatory payments is inconsistent with both the title of Section 104 and the other provisions in Section 104(a).

Third, an interpretation of Section 104(a)(2) that renders noncompensatory punitive damages subject to taxation is also favored by an analysis of the legislative history and the contemporaneous historical events related to Congress' 1918 adoption of the predecessor of Section 104(a), Section 213(b)(6). Section 213(b)(6), as passed by Congress on February 24, 1919, excluded from taxable income "[a]mounts received, through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries

or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness...." In a 1918 report of the House Ways and Means Committee (the Committee), Congress explained its rationale behind this provision, as follows:

Under the present law it is doubtful whether amounts received through accident or health insurance, or under workmen's compensation acts, as compensation for personal injury or sickness, and damages received on account of such injuries or sickness, are required to be included in gross income. The proposed bill provides that such amounts shall not be included in gross income.

H.R.Rep. No. 767, 65th Cong., 2d. Sess. 9–10 (1918).

This explanation of Congress' intent seems most readily understood when placed in historical context. Immediately prior to the 1918 legislation, the IRS was grappling with the question of whether payments resulting from personal injuries, including insurance proceeds and litigation damage awards, were subject to federal income tax. *See generally* Charles R. Cutler, *Taxation of the Proceeds of Litigation,* 57 Colum.L.Rev. 470, 471 n. 5 (1957). In the Internal Revenue Act of 1913, Congress provided that the proceeds of life insurance policies did not constitute income subject to federal income tax. Ch. 16, 38 Stat. 114. In 1915, the IRS took the position that proceeds of accident insurance were taxable under the Internal Revenue Act of 1913, and that amounts received as the result of a suit for "pain and suffering" were similar to accident insurance proceeds, and likewise taxable. T.D. 2135, 17 Treas.Dec.Int.Rev. 39 (1915). In a January 1918 regulation, the IRS broadly stated that damages "received as the result of a suit ... for personal injury, being similar to the proceeds of accident insurance, are to be accounted for as [taxable] income." U.S.Treas.Reg. 33 (rev.) art. 4, § 25 (1918).

Thereafter, however, the IRS apparently had second thoughts about its tax treatment of accident insurance proceeds and requested an opinion from the Attorney

General. The Attorney General summarized the IRS's request as "whether the proceeds of an accident insurance policy received by an individual *on account of* personal injuries sustained by him through accident are [taxable] income" (emphasis added). 31 Op.Att'y Gen. 304 (1918). The Attorney General responded with the opinion that such accident insurance proceeds were not taxable under applicable statutes and court precedent. *Id.* The Attorney General focused on the compensatory nature of such payments, *i.e.,* on the fact that accident insurance payments serve to return human capital that has been lost as a result of the accident, rather than to provide income from that capital. The Attorney General explained:

> Without affirming that the human body is in a technical sense the "capital" invested in an accident policy, in a broad, natural sense the proceeds of the policy do but substitute, so far as they go, capital which is the source of *future* periodical income. They merely take the place of capital in human ability which was destroyed by the accident. They are therefore "capital" as distinguished from "income" receipts.

*Id.* at 308 (emphasis in original).

In apparent response to the Attorney General's opinion, the IRS issued a decision in 1918 which stated that the proceeds of an accident insurance policy received "on account of" personal injuries were not taxable income. T.D. 2747, 20 Treas.Dec.Int. Rev. 457 (1918). Apparently because the IRS had previously analogized accident insurance proceeds to damage awards, the IRS also indicated in its decision that amounts received as the result of a suit for personal injuries similarly would not be taxable.

Placing the Committee's 1918 report on Section 213 in this historical context, it would seem that the Committee must have considered the IRS's change of approach when the Committee reasoned that "it is

doubtful" that taxpayers are required to include in gross income "amounts received through accident ... insurance ... as compensation for personal injury ..., and damages received *on account of* such *injuries*" (emphasis added). Indeed, until the IRS changed its approach, the appropriate tax treatment of accident insurance would seem to have been very much in doubt. Similarly, this history suggests that in stating that "[t]he proposed bill provides that such amounts shall not be included in gross income," the Committee likely intended to codify into law the IRS's recent changed approach, which was based on the Attorney General's opinion. That opinion distinguishes between payments that return capital by compensating an individual for its losses, which the Attorney General concluded are not included in taxable "income," and payments that add to, rather than replace, wealth, which the Attorney General suggested are included in taxable "income." Noncompensatory punitive damages are not in any sense a return of capital and hence, under the Attorney General's analysis, would constitute "income" subject to taxation. An effort by Congress to codify the new IRS approach therefore would not have left noncompensatory punitive damages free from taxation.

Thus, there are three independent reasons for interpreting Section 104(a)(2) as not excluding noncompensatory punitive damages from the scope of "gross income"—(1) exceptions to Section 61 should be construed narrowly, (2) the title and subject matter of Section 104 focus exclusively on payments received as compensation for injuries or sickness, and (3) the historical context in which the pertinent wording of the statute was first enacted also suggests an intention to exclude only compensatory payments. Taken together, these three reasons are compelling, and the court concludes that Section 104(a)(2) does not exclude from taxation noncompensatory punitive damages awarded in tort actions.[4]

---

**4.** During oral argument, plaintiff, relying upon *Horton,* argued that in certain states punitive damages are partially compensatory in nature and therefore, an interpretation of Section

104(a)(2) that focuses on whether damages are compensatory could prove very difficult to apply in instances of punitive damages. But it is not apparent that such an interpretation would

## V.

The Supreme Court's decision in *Burke,* — U.S. —, 112 S.Ct. 1867, upon which plaintiff relies, does not demand a different interpretation of Section 104(a)(2). In *Burke,* the Supreme Court addressed the issue of whether damages received in settlement of a back pay claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.,* are excludable from the recipient's gross income under Section 104(a)(2) as "damages received ... on account of personal injuries." The Supreme Court focused its analysis on the question of whether a Title VII action should be classified as an action for "personal injuries." Because there was no definition of "personal injuries" in the text or legislative history of Section 104, the Court relied upon IRS regulations to define the phrase. The Court noted that the applicable IRS regulations "have linked identification of a personal injury for purposes of § 104(a)(2) to traditional tort principles," *id.,* — U.S. —, 112 S.Ct. at 1870, and the Court therefore proceeded to assess whether Article VII invoked traditional tort principles.[5] The Court concluded that it did not and reasoned that a back pay claim under Title VII, though compensatory in nature, did not involve a tort-like personal injury because the remedies available thereunder did not follow the "common-law tradition of broad tort damages." *Id.,* — U.S. at —, 112 S.Ct. at 1874. The Court explained:

> The remedy [available under Title VII] consists of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination. *See [Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280] (citing 118 Cong.Rec. 7168 (1972)). Nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (*e.g.,* a ruined credit rating). *See Walker v. Ford Motor Co.,* 684 F.2d 1355, 1364–1365, n. 16 (CA11 1982).

*Burke,* — U.S. at —, 112 S.Ct. at 1873.

Herein, to support her argument that noncompensatory punitive damages fall within the scope of Section 104(a)(2), plaintiff relies upon the Supreme Court's discussion in *Burke* of the remedies traditionally available in tort cases. The Supreme Court indicated that damages available for tort injury "in many cases ... are larger than the amount necessary to reimburse actual monetary loss sustained or even anticipated by the plaintiff," *id.,* — U.S. at —, 112 S.Ct. at 1871, and include "punitive or exemplary damages [which] are generally available in those instances where the defendant's misconduct was intentional or reckless," *id.,* — U.S. at —, 112 S.Ct. at 1872. Plaintiff argues that because the Supreme Court characterized punitive damages as one of the hallmark forms of relief available in tort claims, the Supreme Court necessarily envisioned that punitive damages were received "on account of" the personal injuries and hence fell within the scope of Section 104(a)(2).

But this conclusion does not follow from the Supreme Court's analysis. The Court never addressed, either specifically or by implication, the meaning of the phrase "on account of" in Section 104(a)(2). It did not have to. In *Burke,* all of the damages awarded were compensatory in nature and

be particularly difficult to apply. Moreover, there are numerous provisions in the tax laws that are complex in application and a demonstration that there would be some moderate level of complexity in applying a particular interpretation of a tax provision does not necessarily indicate that Congress did not intend that such an interpretation be employed.

5. The IRS regulations defined the Section 104(a)(2) phrase "damages received" as follows: "'[D]amages received (whether by suit or agreement)' means an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R. § 1.104–1(c). However, the regulations do not specifically define when such "damages received" should be deemed to have been received "on account of" personal injuries as is required under Section 104(a)(2) for exclusion from gross income.

thereby were awarded and received "on account of" the violation of Title VII and the injuries sustained. The question before the Supreme Court was not whether the damages were received "on account of" the violation of the statute and the resulting injuries, but rather whether the "injuries" suffered as a result of the violation of Title VII constituted "personal injuries" within the scope of Section 104(a)(2). It was exclusively for purposes of resolving this narrow issue that the Court compared the nature of the remedies allowed under Title VII to the nature of the remedies available in traditional tort actions. Therefore, the Supreme Court's recognition in *Burke* that punitive damages are one of the remedies traditionally available in tort actions does not suggest that the Court concluded that noncompensatory punitive damages awarded in a tort action should be deemed to be received "on account of" the personal injuries for purposes of Section 104. Similarly, the Supreme Court's willingness to consider the availability of punitive damages when determining whether a cause of action is a suit for "personal injuries" does not indicate that any punitive damages awarded in a suit for personal injuries necessarily fall within the exclusion in Section 104(a)(2).

In sum, for purposes of interpreting *Burke*, Section 104(a)(2) can be viewed as creating two distinct requirements before a damage award can be excluded from gross income. First, the suit that resulted in the damage award must be a suit for personal injuries, *i.e.*, a tort-like suit. Second, the portion of the damage award from the tort-like suit that the party seeks to exclude from income must have been received "on account of" the personal injuries. The *Burke* decision involved exclusively the first requirement and did not purport to address the second. The *Burke* Court did not purport to analyze the definition of "on account of" or to determine whether noncompensatory punitive damages in a tort

action are received "on account of" the personal injuries.

## VI.

 Next, plaintiff contends that she should prevail in this action even if the court concludes that noncompensatory punitive damages fall outside of Section 104(a)(2)'s exclusion because the punitive damages in issue here were at least partly compensatory in nature. But the jury instructions belie this argument.

The district court's instructions pursuant to which the jury made the award to plaintiff distinguish sharply between compensatory and punitive damages and provide a distinct factual basis for each type of recovery. The instructions covering the discrimination and harassment claim defined punitive damages as follows: "Punitive damages are damages above and beyond the amount which you may award for compensatory ... damages. Punitive damages are awarded to punish the defendant and to deter others from engaging in similar conduct in the future." The jury instructions covering the intentional infliction of emotional distress claim similarly explained that "[t]he purpose of punitive damages is to punish a Defendant and to discourage ... them ... from committing similar acts" and that any award of punitive damages should be limited to an "amount [sufficient] to ... serve the purposes of punishment and deterrence." Thus, pursuant to these instructions, the jury could not calculate punitive damages in a manner to compensate plaintiff for losses incurred because of her personal injuries. Rather, punitive damages could only be awarded for the purposes of punishment and deterrence. Hence, these jury instructions demand the conclusion that the jury calculated and awarded the punitive damages "on account of" punishment and deterrence and not "on account of" compensating plaintiff for personal injuries.[6]

---

**6.** Plaintiff also argues that the $30,000 in punitive damages awarded for intentional infliction of emotional distress would qualify under both the "but-for" and "sufficient" causation standards articulated by the Fourth Circuit in *Miller*

*II,* because under District of Columbia law, the same elements necessary to demonstrate liability for a compensable injury are sufficient to support an award of punitive damages. But as explained above, the Fourth Circuit ultimately

Plaintiff cites *Eller v. Houston's Restaurants, Inc.*, 35 Fair.Empl.Prac.Cas. (BNA) 1801, 1802 (D.D.C.1984), for the proposition that the entire $140,000 plaintiff received in damages on her sex discrimination and sexual harassment claim were necessarily compensatory in nature because she received the damages based on her allegation of a violation of the District of Columbia Human Rights Act (DCHRA), D.C.Code § 1–2501 *et seq.* (1981). In *Eller,* the court held that the DCHRA did not allow for punitive damages and that all damages awarded thereunder must be compensatory.

At least one other judge on the District Court for the District of Columbia has disagreed with this conclusion in *Eller* and has determined that punitive damages are available under the DCHRA. *Green v. ABC,* 647 F.Supp. 1359, 1366–67 (D.D.C. 1986). More to the point, however, whether or not an award of punitive damages is legally sustainable under the DCHRA, there can be no reasonable dispute that plaintiff received $70,000 in punitive damages for her discrimination and harassment claim. The jury instructions were predicated on the understanding that punitive damages were available under the DCHRA and the jury granted punitive damages pursuant to those instructions. Perhaps plaintiff's former employer could have contested the availability of such punitive damages on appeal. But plaintiff's former employer chose instead to settle the litigation by paying plaintiff the full amount of the judgment, including the amount of punitive damages. In this context, whether or not the punitive damages were proper under the DCHRA, punitive damages were awarded by the jury and paid by plaintiff's former employer.

Hence, plaintiff received a total of $100,000 in payments that were punitive and not compensatory in nature. For all of the reasons described above, such payments fall outside of the exclusion from taxable "gross income" contained in Section 104(a)(2).

### Conclusion

For the reasons set forth above, plaintiff's motion for summary judgment is denied and defendant's cross-motion is granted. Accordingly, the Clerk of the Court is directed to enter judgment dismissing plaintiff's complaint. No costs.

IT IS SO ORDERED.

concluded that damages that are not compensatory in nature constitute a "windfall" and are not awarded "on account of … personal injuries." Herein, the damages are not compensatory in nature. In any event, pursuant to the jury instructions on which the award was based, a demonstration of entitlement to compensatory damages was not sufficient in and of itself to cause an award of punitive damages. The jury could award punitive damages only to the extent the jury concluded that such an award was appropriate to serve the purposes of punishment and deterrence. Punishment and deterrence were not relevant factors in assessing liability for compensatory damages and hence, in awarding punitive damages, the jury had to consider elements distinct from those establishing liability for compensatory damages.