**Elizabeth A. REESE, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 93–5199.

United States Court of Appeals,
Federal Circuit.

May 16, 1994.

David Shane Smith, Spotts, Smith & Fain, P.C., Richmond, VA, submitted for plaintiff-appellant. With him on the brief was John B. Nicholson.

Edward Perelmuter, Atty., Dept. of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen and Kenneth L. Greene, Attys.

Before NIES [*], LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Elizabeth A. Reese appeals from a decision of the United States Court of Federal Claims denying her motion for summary judgment and granting the United States' cross-motion for summary judgment. *Reese v. United States*, 28 Fed.Cl. 702 (1993). Because punitive damages received in settlement of civil litigation are not excludable from a taxpayer's "gross income" subject to federal income tax under section 104(a)(2) of the Internal Revenue Code, 26 U.S.C. § 104(a)(2) (1987), we affirm.

## BACKGROUND

The facts of this case are undisputed. On March 11, 1985, Reese filed suit against her former employers in the United States District Court for the District of Columbia, alleging that she had been forced to terminate her employment because of gender discrimination and sexual harassment by her employers (1) in violation of the District of Columbia Human Rights Act (DCHRA), *see* D.C.Code Ann. § 1–2501 (1981); (2) in breach of her employment contract; and (3) amounting to an intentional infliction of emotional distress. *Reese v. Hayden*, Civ. No. 85–0827 (D.D.C. filed Mar. 11, 1985). Reese requested, *inter alia*, compensatory and punitive damages and won a jury verdict awarding her $150,000 in compensatory damages and $100,000 in punitive damages. Following the trial, the defendants filed motions for judgment notwithstanding the verdict.

The parties later entered into a "Release, Settlement and Indemnity Agreement," according to which Reese agreed to dismiss her suit against certain defendants, and the remaining defendants agreed to withdraw their motions for JNOV. In addition, the remaining defendants agreed to pay Reese the $250,000 in total damages awarded pursuant to the verdict, plus costs and attorneys' fees of $239,437.01. The sum of $489,437.01 was paid to Reese on January 28, 1987.

Reese filed her 1987 federal income tax return, including in gross income the $100,000 in punitive damages she received under the settlement agreement. On December 11, 1989, she filed an amended return for the calendar year 1987, claiming a refund of $32,580, and asserting that punitive damages were excludable from gross income under section 104(a)(2) of the Internal Revenue Code, which excludes from gross income "any damages received ... on account of personal injuries or sickness." [1] Reese's

* Circuit Judge Helen W. Nies vacated the position of Chief Judge on March 17, 1994.

1. Section 104 was amended on December 19, 1989 to provide that "[Section 104(a)(2)] shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7641, 103 Stat. 2106, 2379 (1989). The amendment is applicable only to "amounts received after July 10,

claim for refund was disallowed by the Internal Revenue Service (IRS).

Reese then filed suit in the Court of Federal Claims seeking a refund of $32,580 plus court costs, expenses, interest, and attorneys' fees. The parties filed cross-motions for summary judgment and the court granted summary judgment in favor of the United States. The court concluded that section 104(a)(2) is ambiguous. *Reese,* 28 Fed.Cl. at 706. Adhering to the general tenet that the language "gross income" is to be construed broadly and exemptions to gross income are to be construed narrowly, the court then concluded that the exclusion of section 104(a)(2) does not encompass punitive damages because the title and subject matter of section 104 are limited to payments received as "compensation" for injuries or sickness. It stated that such an interpretation is supported by the legislative history and the contemporaneous events relating to the adoption of the predecessor statute to section 104. *Id.* at 706–07. Reese now appeals from that judgment. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(3) (1988).

## DISCUSSION

■ We review a decision of the Court of Federal Claims to grant summary judgment *de novo. Quaker State Oil Ref. Corp. v. United States,* 994 F.2d 824, 826 (Fed.Cir. 1993). There being no dispute as to any material fact, our review of the decision turns on the proper interpretation of the Internal Revenue Code, a question of law for our *de novo* determination. *See id.* at 826–27.

■ The question of law presented to us is whether punitive damages are received "on account of personal injuries" and therefore excludable from gross income under section 104(a)(2) of the Code. To resolve this question of statutory interpretation, we look first to the language of the statute. *Martel v. Department of Transp., Federal Aviation Admin.,* 735 F.2d 504, 507 n. 6 (Fed.Cir.), *cert. denied sub nom. Schapansky v. Depart-*

*ment of Transp.,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984).

The Code provides that gross income includes "all income from whatever source derived." 26 U.S.C. § 61(a) (1987). Section 104(a) excludes from gross income "compensation for injuries and sickness" and provides as follows:

§ 104. Compensation for injuries and sickness.

(a) **In general.**—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, *gross income does not include—*

\*　　\*　　\*　　\*　　\*

(2) *the amount of any damages received* (whether by suit or agreement and whether as lump sums or as periodic payments) *on account of personal injuries* or sickness. . . .

26 U.S.C. § 104 (1987) (emphasis added). Reese contends that the statute by its plain meaning excludes from gross income all damages received in a personal injury suit, including punitive damages, because such damages are received "on account of" personal injuries. We disagree.

The language "on account of" is not free of ambiguity; rather, it is susceptible of at least two conflicting interpretations. *See Reese,* 28 Fed.Cl. at 706; *Commissioner v. Miller,* 914 F.2d 586 (4th Cir.1990). Reese interprets the language "on account of" to describe a causal relationship between damages and injury according to which damages are received "on account of" a personal injury whenever a showing of personal injury is a legal prerequisite for the award of those damages. In other words, any damages ultimately received in a case involving personal injury are damages received "on account of" that personal injury. However, the government urges a tighter interpretation, one which defines a causal relationship according to which damages are received "on account of" personal injuries only when the injury in

1989." *See* 26 U.S.C.A. § 104 note (West Supp. 1993). No argument has been raised concerning

any possible relevance of this amendment.

and of itself justifies such damages. Under the government's interpretation, punitive damages are not encompassed by the exclusion, because those damages are received, not because of a personal injury, but in large part "on account of" a defendant's egregious conduct and the jury's desire to punish and deter such conduct.

■ Both interpretations are plausible. We therefore disagree with Reese that the question of her tax liability is readily settled by the plain meaning of the statute. Consequently, we must "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990).

■ Section 104 is found in Part III of Subchapter B of the Code, entitled "Items specifically excluded from gross income." Section 104 is entitled *"Compensation for injuries or sickness."* 26 U.S.C. § 104 (emphasis added). "Compensatory damages" are commonly understood to mean damages "such as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury." Black's Law Dictionary 390 (6th ed. 1990). *See Immigration and Naturalization Serv. v. National Ctr. for Immigrants*, —— U.S. ——, ——, 112 S.Ct. 551, 556, 116 L.Ed.2d 546 (1992) ("the title of a statute or section can aid in resolving an ambiguity in the legislation's text").

Consistent with this common meaning of "compensatory damages," section 104's enumerated categories encompass only the replacement of losses resulting from injury or sickness. Section 104(a)(1) exempts amounts received under workmen's compensation acts; section 104(a)(3) exempts amounts received through accident or health insurance; section 104(a)(4) exempts amounts received as a pension, annuity, or similar allowance for personal injuries or sickness; and section 104(a)(5) exempts amounts received as disability income. Reese's proposed interpretation of section 104(a)(2) as reaching noncompensatory payments is therefore inconsistent with the title of section 104 and with the

express provisions of sections 104(a)(1) and (a)(3)–(a)(5). *See King v. Saint Vincent's Hosp.*, —— U.S. ——, ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) ("[T]he meaning of statutory language, plain or not, depends on context.").

■ Furthermore, an abiding principle of federal tax law is that, absent an enumerated exception, gross income means all income from whatever source derived. *See* 26 U.S.C. § 61(a). "The income taxed is described in sweeping terms and should be broadly construed in accordance with an obvious purpose to tax income comprehensively." *Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949). "[E]xemptions, on the other hand, are specifically stated and should be construed with restraint in the light of the same policy." *Id.* Thus, all realized accessions to wealth are presumed to be taxable income, unless a taxpayer can demonstrate that an acquisition is specifically exempted. *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955) (it is the intention of Congress to tax all gains except those specifically provided for); *Oklahoma Tax Comm'n v. United States*, 319 U.S. 598, 606, 63 S.Ct. 1284, 1288, 87 L.Ed. 1612 (1943) (exemptions from taxation are not to be implied; they must be expressed).

■ Viewed in its statutory context and against the presumption that all accessions are taxable unless specifically and unambiguously excluded, we conclude that Congress did not intend section 104(a)(2) to exclude from gross income noncompensatory damages such as punitive damages. "[P]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981). *See also International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979) ("Punitive damages 'are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible con-

duct and to deter its future occurrence.'" [citation omitted] ); *Sigal Constr. Corp. v. Stanbury,* 586 A.2d 1204, 1219 n. 26 (D.C.App.1991) ("Punitive damages are penal in nature and are designed to punish a knowing wrongdoer[, whereas c]ompensatory damages, on the other hand, serve to compensate the victim, with little, if any, attention paid to the intention behind the negligent action.").

■ Reese argues that the damages she received through her action under the DCHRA, despite their punitive "label," are all compensatory. She reasons that "[s]ince DCHRA expressly provides only for the award of compensatory damages, all awards made under this specific provision are *ipso facto* compensatory in nature."

As Reese points out, the U.S. District Court for the District of Columbia has been inconsistent concerning whether punitive damages are available under the DCHRA. *Compare Green v. American Broadcasting Co.,* 647 F.Supp. 1359 (D.D.C.1986) (allowing punitive damages under the DCHRA) *with Thompson v. International Ass'n of Machinists & Aerospace Workers,* 614 F.Supp. 1002 (D.D.C.1985) (punitive damages are not available under the DCHRA). However, the District of Columbia Court of Appeals recently answered the question in the affirmative. In *Arthur Young & Company v. Sutherland,* 631 A.2d 354 (D.C.App.1993), the court concluded that "the Council of the District of Columbia, in enacting the DCHRA, intended to include punitive damages in the arsenal of available remedies for discrimination." 631 A.2d at 371. Thus, the District of Columbia Court of Appeals has interpreted the DCHRA as permitting punitive damages as well as compensatory damages, thereby distinguishing between them and blunting the force of Reese's argument.

The complaint filed by Reese in district court specifically requested both compensatory and punitive damages, and the jury instructions proposed by Reese and those actually given to the jury by the court clearly distinguished between compensatory and punitive damages. The following proposed jury instruction regarding damages was submitted to the court by Reese:

If you find in favor of Elizabeth Reese for her claim of intentional infliction of emotional distress, you should award [her] an amount to fully and fairly compensate her for any mental pain and suffering, nervousness, indignity, humiliation, embarrassment, and insult to which she was subjected and which is a direct result of the offending conduct.

Moreover, you may, but are not required to, award *an additional sum in punitive damages. The purpose of punitive damages is to punish a Defendant and to discourage any of them and others* from committing similar acts. Any award you make in punitive damages should be sufficient in amount to, in your best collective judgment, serve the purposes of punishment and deterrence [emphasis added].

In addition to instructing the jury that it could award damages to Reese to compensate her for her injuries, the following jury instruction was given to the jury:

The plaintiff is also requesting an award of punitive damages against the defendant. *Punitive damages are damages above and beyond the amount which you may award for compensatory or nominal damages. Punitive damages are awarded to punish the defendant and to deter others from engaging in similar conduct in the future.* However, you may award punitive damages only if you find that the act or acts of the defendant were malicious and in willful, wanton or reckless disregard of plaintiff's rights [emphasis added].

Thus, the characterization of punitive damages as being distinct from compensatory damages in order to punish and deter conduct was emphasized by the jury instructions. Accordingly, the jury separately awarded compensatory and punitive damages.

There is also evidence in the legislative history of section 104(a)(2) supporting the conclusion that punitive damages are not excludable from gross income. *See Haggar Co. v. Helvering,* 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940) (statute must be construed in light of its legislative purpose). The predecessor statute to section 104(a)(2),

section 213(b)(6) of the Revenue Act of 1918, excluded from taxable income "[a]mounts received, through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness." [2] Preceding the enactment of section 213(b)(6), the Secretary of the Treasury requested an opinion from the Attorney General concerning the tax treatment of accident insurance proceeds received on account of personal injuries. *See* 31 Op.Atty.Gen. 304 (1918). In response, the Attorney General concluded that "the proceeds of an accident insurance policy [were] not 'gains or profits and income'" but were instead a return of capital and hence were not taxable in accordance with statute and precedent. *Id.* at 308; *accord Doyle v. Mitchell Bros. Co.,* 247 U.S. 179, 185, 38 S.Ct. 467, 469, 62 L.Ed. 1054 (1918).

After the Attorney General's report, the IRS issued a decision holding that "the proceeds of an accident insurance policy received by an individual on account of personal injuries ... [were] not taxable...." T.D. 2747, 20 Treas.Dec.Int.Rev. 457 (1918). Moreover, the IRS held "upon similar principles that an amount received by an individual as the result of a suit or compromise for personal injuries" would not be taxable. *Id.*

Subsequent to these events, section 213(b)(6) was enacted. In a 1918 report of the House Committee on Ways and Means, Congress explained the rationale behind section 213(b)(6), as follows:

> Under the present law it is doubtful whether amounts received through accident or health insurance, or under workmen's compensation acts, as compensation for personal injury or sickness, and damages received on account of such injuries or sickness, are required to be included in gross income. The proposed bill provides that such amounts shall not be included in gross income.

H.R.Rep. No. 767, 65th Cong., 2d Sess. 9–10 (1918). With the passage of section 213(b)(6), Congress likely intended to codify the IRS's stated approach, which was in turn based on the Attorney General's opinion. After the enactment of section 213(b)(6), the IRS noted that "so far as personal injuries are concerned, [section 213(b)(6)] is merely declarative of the [Attorney General's and IRS's] conclusions and intended to go no further." 2 C.B. 71, 72 (1920) (citing 31 Op.Atty.Gen. 304 and T.D. 2747). The IRS continued: "These conclusions rest, as stated, upon the theory of conversion of capital assets. It would follow that personal injury not resulting in the destruction or diminution in the value of a capital asset would not be within the exemption." *Id.* at 72.

In view of the focus on the "conversion of capital assets" theory in the passage of section 104(a)(2)'s predecessor, it would be inconsistent with the legislative history to treat punitive damages as excludable from income, since punitive damages in no way resemble a *return* of capital. *Accord Glenshaw Glass,* 348 U.S. at 432 n. 8, 75 S.Ct. at 478 n. 8 ("The long history of departmental rulings holding personal injury recoveries nontaxable on the theory that they roughly correspond to a return of capital cannot support exemption of punitive damages.... Damages for personal injury are by definition compensatory only.") (citations omitted); *Miller,* 914 F.2d at 589 ("[P]unitive damages, as the name connotes, are rather a punishment for and deterrent to wrongdoing than a means of recompensing the victim. To the victim they are a windfall not necessarily related to the injury he has suffered.") (construing Maryland law). Similarly, references to accident and health insurance receipts and workmen's compensation also emphasize the "compensation for loss" aspect of the exclusion, and further indicate the intent of Congress. In contrast, punitive damages represent a pure accession to a taxpayer's wealth and cannot be excluded as compensation for personal injury.

Notwithstanding the evidence that Congress did not intend to exclude punitive dam-

---

**2.** Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1066 (1919). The Internal Revenue Code of 1954 incorporated this general language into sec-

tion 104(a)(2), ch. 1, 68A Stat. 30, and that language has been retained despite subsequent amendments.

ages from gross income under section 104(a)(2), Reese urges that case law holds that the proper interpretation of the phrase "any damages received ... on account of personal injuries" in section 104(a)(2) requires focus on the nature of the underlying cause of action, rather than on the nature of the specific damages at issue. Provided the underlying cause of action is tort-like, Reese asserts that all awards "naturally flow[ing] from the harm which the plaintiff received" are properly excluded from gross income.

In particular, Reese relies on *United States v. Burke*, —— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992).[3] In *Burke*, the Supreme Court addressed the question whether a payment received in settlement of a back-pay claim under Title VII of the Civil Rights Act of 1964 is excludable from a recipient's gross income under section 104(a)(2) as "damages received ... on account of personal injuries." —— U.S. at ——, 112 S.Ct. at 1868. The Court held that to qualify for exclusion under section 104(a)(2), damages received must redress a tort-like personal injury. *Id.* at ——, 112 S.Ct. at 1872. In determining whether the injury involved was tort-like, the Court noted that a "hallmark[ ] of traditional tort liability is the availability of a broad range of damages[,]" including "punitive or exemplary damages ... in those instances where the defendant's misconduct was intentional or reckless." *Id.* at —— —— , 112 S.Ct. at 1871–72. The Court concluded that the "remedial scheme" under Title VII "consist[ed] of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination [and did not] evidence a tort-like conception of injury and remedy." *Id.* at ——, 112 S.Ct. at 1873. Therefore, the underlying action was held not to be for "personal injury" within the meaning of section 104(a)(2).

The *Burke* case, however, did not present facts requiring the Court to determine whether punitive damages awarded in a personal injury action are received "on account of" personal injury so as to be excludable from gross income by virtue of section 104(a)(2). The case did not involve punitive damages; thus, we do not regard *Burke* as controlling or even relevant to our interpretation of the statute on this point. The Court's reference to punitive damages was merely part of a broad definition of tort liability rather than a holding that punitive damages were "compensation for injuries or sickness," excludable from income under section 104(a)(2).

In addition to *Burke*, Reese contends that the taxability of punitive damages is contrary to the great weight of judicial authority on the subject. In support, Reese cites *Redfield v. Insurance Company of North America*, 940 F.2d 542 (9th Cir.1991); *Pistillo v. Commissioner of Internal Revenue*, 912 F.2d 145 (6th Cir.1990); *Byrne v. Commissioner of Internal Revenue*, 883 F.2d 211 (3d Cir. 1989); and *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir.1989). Again, Reese's reliance is misplaced. While these cases did focus on the nature of the underlying cause of action, like *Burke*, they did so in order to decide whether the underlying action was one to redress a "personal injury" within the meaning of section 104(a)(2). To the extent these cases dealt with the excludability of damages received, they dealt only with compensatory damages, not punitive damages. *See Redfield*, 940 F.2d at 544; *Pistillo*, 912 F.2d at 147; *Byrne*, 883 F.2d at 213; and *Wulf*, 883 F.2d at 873.

Additionally, Reese relies on the treasury regulations, which provide in section 1.104–1(c) that "[t]he term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 C.F.R.

---

**3.** The Tax Court has interpreted *Burke* to support the position that punitive damages are excludable under § 104(a)(2). *Horton v. Commissioner*, 100 T.C. No. 8, 1993 WL 28557 (1993) (over a three-judge dissent), *appeal docketed*, No. 93–1928 (6th Cir.); *accord Hawkins v. United States*,

93–1 U.S.T.C. (CCH) 50,208, 1993 WL 144704 (D.Ariz.1993), *appeal docketed*, No. 93–15828 (9th Cir.); *O'Gilvie v. United States*, 92–2 U.S.T.C. (CCH) 50,567, 1992 WL 223847 (D.Kan. 1992).

§ 1.104–1(c) (1987). While the regulations provide that to qualify for an exclusion under section 104(a)(2), the underlying action must assert a violation of tort or tort-like rights, they do not indicate that all types of damages received in such an action, whether compensatory, punitive, or otherwise, are necessarily received "on account of personal injuries" within the meaning of section 104(a)(2). We note that to the extent the regulations deal with punitive damages, those damages are considered gross income. *See* 26 C.F.R. § 1.61–14(a) (1987) ("[P]unitive damages such as treble damages under the antitrust laws and exemplary damages for fraud are gross income.").

Thus, we do not regard as binding or persuasive the authority Reese relies upon for her assertion that as long as the underlying action is tort-like, all damages, regardless of their nature, are excludable under section 104(a)(2). Such an interpretation does not comport with longstanding precedent that favors the inclusion in gross income of all accessions to wealth and it is inconsistent with the other provisions of section 104. Furthermore, it would require that we disregard evidence in the legislative history that only compensatory damages are covered by section 104.

As the government points out, the only circuit courts to have directly addressed the issue presented here have either rejected Reese's position and held that punitive damages received in a personal injury action are not excludable from gross income or else were based on an IRS revenue ruling that has since been revoked. The Fourth Circuit concluded that punitive damages were not excludable from gross income as damages received on account of personal injuries. *Miller*, 914 F.2d at 586. The Ninth Circuit, to the contrary, held that section 104(a)(2) excludes punitive damages from income as well as all compensatory damages where there has been a personal injury. *Roemer v. Commissioner of Internal Revenue*, 716 F.2d 693, 700 (9th Cir.1983). However, the *Roemer* holding was based solely on an IRS revenue ruling that since has been revoked. *See* Rev.Rul. 75–45, 1975–1 C.B. 47, *revoked by* Rev.Rul. 84–108, 1984–2 C.B. 32. Subsequent to the IRS's change in position, at least one district court in the Ninth Circuit has held that the *Roemer* rule is no longer good law, and that punitive damages are not excludable under section 104(a)(2) in accordance with the "well-settled [rule] that punitive damages [are] taxable income because they represent[ ] an accession to wealth rather than restoration of capital." *Rice v. United States*, 834 F.Supp. 1241 (E.D.Cal.1993) (citing *Starrels v. Commissioner of Internal Revenue*, 304 F.2d 574, 576–77 (9th Cir. 1962)).

In sum, we do not accept Reese's assertion that the punitive damages she received in her DCHRA action were excludable under § 104(a)(2). They represented income and are taxable under 26 U.S.C. § 61(a) (1987). The decision of the Court of Federal Claims, based on its thorough and well-reasoned opinion, is affirmed.

## CONCLUSION

Punitive damages are not excludable from gross income pursuant to 26 U.S.C. § 104(a)(2) (1987) because such damages are not received on account of personal injury within the meaning of the Code. Accordingly, we affirm the Court of Federal Claims' grant of the government's motion for summary judgment.

*AFFIRMED*