**Dorothy GREEN, Plaintiff,**

v.

**AMERICAN BROADCASTING COMPANIES, INC., et al., Defendants.**

**Civ. A. No. 86–1466.**

United States District Court, District of Columbia.

Nov. 12, 1986.

Linda Huber and Mark Lane, Washington, D.C., for plaintiff.

A. Stephen Hut, Jr., Lynn Bregman, Carol H. Fishman, and David P. Donovan, Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

Plaintiff, a black female, was employed by defendant American Broadcasting Companies, Inc. ("ABC") as a Technical Manag-er at ABC's Washington News Bureau from November 1981 until her employment was terminated on May 16, 1986. *Defendants' Statement of Material Facts as to which There is No Genuine Issue* 2. Plaintiff alleges that she was repeatedly harassed and discriminated against by defendants. Specifically, plaintiff alleges that defendants encouraged insubordination by plaintiff's supervisees, assigned plaintiff an "oppressive work schedule," were routinely rude, cold, and disdainful to plaintiff, issued a written performance evaluation that falsely attacked plaintiff's job performance, subjected plaintiff to job-related restrictions that non-female, non-minority co-workers did not experience, and created a "hostile and intimidating work environment poisoned with discrimination." *Complaint* at ¶¶ 12–16. These acts, plaintiff claims, amount to employment discrimination in violation of the District of Columbia Human Rights Act of 1977, D.C.Code § 1–2512.

Plaintiff also maintains that she was fired in retaliation for filing a discrimination claim against defendants in the Superior Court of the District of Columbia. She further maintains that defendants' conduct intentionally caused her severe and substantial emotional distress.

Defendants present a different picture. They claim, first of all, that plaintiff's employment was terminated for cause. *Answer and Counterclaim of Defendant ABC* ¶ 9. Second, they maintain that plaintiff's medical history shows that any emotional distress, or physical manifestation of that distress, cannot be tied to defendants' actions.

Several motions are pending before this Court. Defendants have moved for summary judgment on plaintiff's claim of intentional infliction of emotional distress and have also moved to strike plaintiff's jury demand and prayer for punitive damages. Plaintiff has moved to amend her complaint. All motions are vigorously opposed. The Court has thoroughly considered each motion and opposition thereto, the entire record in this case, and the underlying law.

In consequence, the Court grants defendants' motion for partial summary judgment, denies defendants' motion to strike plaintiff's jury demand, denies defendant's motion to strike the prayer for punitive damages, and grants plaintiff's motion to amend her complaint.

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Defendants have moved for summary judgment on Count III of plaintiff's complaint, an allegation of intentional infliction of emotional distress. The legal standard governing summary judgment motions is clear. Summary judgment is proper only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). While the movant must demonstrate that material facts are undisputed, he need not negate all elements of his opponent's claim. He may instead lead the Court to the parts of the record that show an absence of evidence to support his opponent's case. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Greenberg v. Food and Drug Administration,* 803 F.2d 1213, 1215 (D.C.Cir.1986). Once that is done, his opponent must point to evidence to support the elements of the claim as to which he has the burden of proof. *Celotex* 106 S.Ct. at 2554. If the non-movant fails to do so, the court must grant summary judgment. *Id.*

The contours of the tort of intentional infliction of emotional distress in the District of Columbia are no less clear. It consists of " 'extreme and outrageous' " conduct, which "intentionally or recklessly" causes the plaintiff " 'severe emotional distress.' " *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.App.), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982) (*quoting Restatement (Second) of Torts* § 46 (1965)); *see also, Howard University v. Best,* 484 A.2d 958, 985 (D.C.App.1984). Plaintiff must prove all three elements to prevail on her claim. *Id.*

■ Defendants raise two arguments in their summary judgment motion. First, they claim that the conduct about which plaintiff complains is insufficient, as a matter of law, to show intentional infliction of emotional distress. Nowhere do they point to evidence or a lack of evidence in the record, as *Catrett* requires, to support their claim of summary judgment on this ground. Indeed, their assertion amounts to a motion to dismiss for failure to state a claim, not a summary judgment motion. *See, e.g., Defendants' Reply to Plaintiff's Oppositions* 8 ("the conduct of which plaintiff complains ... is insufficient to state a claim for intentional infliction ..."). Even if the Court were to regard it as such, defendants' argument would fail.

Conduct that gives rise to liability for intentional infliction of emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sere,* 443 A.2d at 37. Actions that violate public policy, including discrimination, can constitute such extreme and outrageous conduct. *Best,* 484 A.2d at 986.

■ Defendants maintain that District of Columbia law allows an employee to recover for intentional infliction of emotional distress only if he or she has suffered a physical assault in the course of the employment. *Memorandum of Points and Authorities in Support of Defendants' Motions* 14. This, however, is an overly constricted view of the law. Granted, mere employee-employer conflicts, even those marked by charges of sexual harassment, are not necessarily characterized by the degree of serious misconduct that gives rise to this tort. *Id.* at 986–87. But a pattern of harassment that violates public policy may, if serious enough to constitute "extreme and outrageous conduct," rise to intentional infliction of emotional distress

by an employer. *Id.* at 986.[1] This Court could not say, on a motion to dismiss, that plaintiff could fail to prove that the harassment and discrimination of which she complains was sufficiently extreme.

Defendants, however, also argue that they are entitled to summary judgment because the record shows that any emotional distress plaintiff may have experienced was not the result of defendants' acts. Under District of Columbia law, plaintiff must be able to show that defendants' actions "proximately cause[d] [her] emotional upset 'of so acute a nature that harmful physical consequences might not be unlikely to result.'" *Sere v. Group Hospitalization, Inc.*, 443 A.2d at 37 (*quoting Clark v. Associated Retail Credit Men*, 105 F.2d 62, 65 (1939)). Defendants are entitled to summary judgment on this tort claim because the evidence shows that they did not cause plaintiff's emotional distress.

The record reveals that, on February 9, 1985, plaintiff was injured in a serious automobile accident. *Fishman Affidavit, Medical Records Attachment* ("Medical Records") at 55007. Afterwards she experienced, in addition to physical and memory disabilities, anxiety and depression. *Id.* at 55008. Both plaintiff's psychiatrist and neurologist found that those emotional problems were "caused by the accident." *Id.* at 55007–08.

One year after the accident, plaintiff, who was suffering from headaches and complaining of depression, revisited Dr. Richard Restak, a neurologist who treated her for post-traumatic syndrome after the car crash. *Id.* at 55007. While Dr. Restak concluded that the relationship of these new complaints to the car accident was "questionable," he did not suggest what factors may have caused plaintiff's recurring ailments.

Even if plaintiff's emotional difficulties could be tied to defendants, she could not recover damages unless they caused her some physical harm. *Garber v. United States*, 578 F.2d 414 (D.C.Cir.1978). Nothing in the record connects plaintiff's physical ailments with acts of defendants. As such, her emotional distress claim is untenable.

Moreover, the record does not even connect plaintiff's emotional ailments with defendants' acts. A letter from Dr. Richard Greenberg, plaintiff's psychiatrist, to her supervisor suggests that plaintiff found her work stressful. *Id.* at 6018. To the extent that plaintiff's claim results from a stressful work situation created by defendants' alleged acts of discrimination, it is subsumed within her discrimination claim. *Stewart v. Thomas*, 538 F.Supp. 891, 896 (D.D.C.1982). To the extent that stress is merely a corrollary of plaintiff's job responsibilities, it hardly meets the rigorous standards for an intentional emotional distress action in the District of Columbia, where the complained-of acts must have exceeded "all possible bounds of decency and [could be] regarded as atrocious and utterly intolerable in a civilized community." *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C.App.1980); *see, Restatement (2d) of Torts* § 46, comment (j) (1965) (stress not sufficient harm).

A letter from Dr. Greenberg to attorney Keith Watters discusses the cause of plaintiff's emotional distress. There the psychiatrist states that plaintiff's "emotional and work problems would not have occurred without the car accident;" the physical and emotional problems plaintiff experienced *as a result of the accident* "created greater pressure for her at work" and "magnified her work problems as time progressed." *Id.* at 55008.

---

**1.** Contrary to defendants' assertions, *Coleman v. American Broadcasting Companies, Inc.*, 38 Emp.Prac.Dec. (CCH) ¶ 35,797, at 40,608 (D.D.C. 1985) does not hold otherwise. Instead, *Coleman* found that the complaint stated a claim of intentional infliction of emotional distress because acts of sexual harassment "may" constitute sufficiently outrageous conduct. *Id.* at 40,-613. Although *Coleman* states that it denied summary judgment on the emotional distress claim, its reasoning clearly shows that the Court treated the motion as a motion to dismiss. *Id.*

■ The evidence adduced by defendants refutes plaintiff's claim that defendants' acts were the proximate cause of plaintiff's emotional or physical ills. Plaintiff has not properly refuted that evidence or shown that defendants' acts exacerbated her ills. Indeed, plaintiff has not submitted any cognizable evidence to this Court at all. She has submitted an "affidavit" tying her physical ailments to her employment with defendant. Attached to that is a recent letter from Dr. Greenberg to plaintiff's counsel stating that work-related stress deepened plaintiff's depression and impeded her recovery. The affidavit and letter, however, were neither notarized nor made "under penalty of perjury." As such, they amount to unsworn statements and the Court may not consider them. *Adickes v. Kress*, 398 U.S. 144, 157 n. 16, 90 S.Ct. 1598, 1608 n. 16, 26 L.Ed.2d 142 (1970); 28 U.S.C. § 1746 (Supp.1986); *Pfeil v. Rogers*, 757 F.2d 850, 858–59 (7th Cir.1983).[2]

In a separate affidavit, plaintiff's counsel argues that the record does not support summary judgment on this claim but, if the Court disagrees, it should permit plaintiff additional discovery before ruling on the motion. *Affidavit of Counsel.* The Court is unpersuaded by this argument.

Under Fed.R.Civ.P. 56(f), the Court may deny or defer a summary judgment motion if the non-movant demonstrates why he cannot produce facts to counter the motion and outlines the triable issues of fact that he hopes discovery will produce. *Hotel and Restaurant Employees Union, Local 25 v. Attorney General of the United States*, 804 F.2d 1256, 1269 (1986). Plaintiff's counsel claims that she cannot produce the necessary facts because she has had insufficient opportunity for discovery from defendants. *Affidavit of Counsel* ¶ 4–5.

■ If plaintiff's case depended on facts in the exclusive control of defendants, addi-

tional discovery would be warranted. *See, Federal Practice and Procedure* at § 2741. Information about the cause of plaintiff's emotional distress, however, is, if anything, within *plaintiff's* exclusive control. Plaintiff may not invoke the shelter of Rule 56(f) to excuse her own lack of diligence in demonstrating to the Court that there is indeed a genuine issue of fact with respect to the emotional distress claim. *See, e.g., Landmark Development Corporation v. Chambers Corp.*, 752 F.2d 369 (9th Cir.1985) (Rule not a haven for the lazy or dilatory); *Exxon v. Federal Trade Commission*, 663 F.2d 120, 126–27 (D.C. Cir.1980) (56(f) motion should be denied when no showing that discovery would be relevant); *see generally*, 10A *Federal Practice and Procedure: Civil* at § 2741.

Because plaintiff has not countered the evidence adduced by defendants to support summary judgment, and is not entitled to additional discovery, the Court has no choice but to grant defendants' motion.

## PLAINTIFF IS ENTITLED TO A JURY TRIAL.

Defendants have moved to strike plaintiff's demand for a jury trial. They accurately point out that the District of Columbia Human Rights Act, D.C.Code § 1–2501 *et seq.*, under which plaintiff has sued, does not explicitly guarantee trial by jury. They claim that the Act is patterned on Title VII of the Civil Rights Act, and like Title VII provides only equitable remedies. As such, they argue, the Seventh Amendment bars a jury trial.

The Court finds that a jury may decide issues of fact in suits brought under the District of Columbia Human Rights Act. The Court also finds that the Seventh Amendment authorizes trial by jury under this Act. The Court is therefore left no

---

**2.** The Court is aware of two cases in which the Court of Appeals for this Circuit referred to statements in affidavits that do not appear to comply with the formal requisites for sworn statements. *McClelland v. Andrus*, 606 F.2d 1278–79 (1979); *Ray v. Turner*, 587 F.2d 1187,

1196 (1978). The formal sufficiency of those affidavits, however, was not before the Court. Had it been, the ordinary commands of case law, statute, and Local Rule 106(g) would have forced the Court to ignore the statements.

alternative but to deny defendants' motion to strike the jury demand.

### 1. A jury may decide issues of fact in cases brought under the District of Columbia Human Rights Act.

■ Neither the Court of Appeals for the District of Columbia Circuit nor the District of Columbia Court of Appeals has decided whether the D.C. Act carries with it a right to a jury trial. But in *Howard University v. Best,* the D.C. Court of Appeals stated several times that a jury may decide issues raised under the Act. 484 A.2d 980–81, 983–84 (1984). Moreover, the Court of Appeals found the jury's role extremely important: it may determine, "as the representative of the larger community, on a case by case basis, the behavior which the values and norms of the community, as only generally expressed in the D.C. Statute, will not tolerate." *Id.* at 981.

■ A district court sitting in diversity is bound to respect the considered dicta as well as the holdings of state court decisions. *Nolan v. Transocean Air Lines,* 365 U.S. 293–295–96, 81 S.Ct. 555, 557, 5 L.Ed.2d 571 (1965) (per curiam); *Conesco Industries v. Conforti & Eisele, Inc.,* 627 F.2d 312, 318 (D.C.Cir.1980) (Wilkey, J., dissenting); *Manalis Finance Co. v. United States,* 611 F.2d 1270, 1272 (9th Cir. 1980). While the *Best* court did not exhaustively examine whether a jury trial was warranted, it clearly considered the legitimacy and role of a jury under the statute. The explicitness of its repeated expressions forces this Court to conclude that the *Best* dictum represents a reliable indication of what the District of Columbia court would hold on the issue. As such, this Court must follow the dictum and allow a jury trial. *Nolan,* 365 U.S. at 295–96, 81 S.Ct. at 557; *Conesco,* 627 F.2d at 319.

### 2. The Constitution authorizes a jury trial under the Human Rights Act.

■ The historical separation between law and equity is, for good or ill, not merely of interest to antiquarians. The Seventh Amendment provides an inviolate right to a jury trial "in suits at common law, where the value in Controversy shall exceed twenty dollars." As Mr. Justice Story established in 1830, and as the Supreme Court has held ever since, the jury right is not limited to actions recognized at common law in 1791, when the Constitution was ratified, but extends to all litigation that would then have been classified "at law." *Parsons v. Bedford,* 3 Pet. 433, 446–47 (1830); *see also, e.g., Curtis v. Loether,* 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974). Only litigants in equity or admiralty may not invoke the Seventh Amendment's guarantee. *Parsons,* 3 Pet. at 447; *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 470–71, 82 S.Ct. 894, 896, 8 L.Ed.2d 44 (1962).

It is equally clear that the right to trial by jury extends to suits involving questions of both law and equity. *Id.; Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *National Life Insurance Co. v. Silverman,* 454 F.2d 899 (D.C.Cir.1971). This precept applies to discrimination suits no less than to other types of litigation. *See, e.g., Johnson v. Railway Express Agency,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975); *Curtis v. Loether,* 415 U.S. at 195 n. 10, 94 S.Ct. at 1009 n. 10; *Stebbins v. Nationwide Mutual Insurance Co.,* 757 F.2d 364, 371 (D.C.Cir.1985) (Edwards, J., concurring). Regardless of the character of the overall action, if the issues presented and relief sought are "legal" in nature, a plaintiff in a discrimination suit has the right to request a jury trial. *Curtis,* 415 U.S. at 196 n. 10, 94 S.Ct. at 1009 n. 10; *Goodman v. Washington Radio, Inc.,* Civil Action No. 81–0062, slip op. at 2 (Apr. 26, 1986).

Defendants suggest suits lodged under the District of Columbia Human Rights Act sound in equity only and any monetary recovery under the Act is ancillary to the equitable relief. They urge that the Act is no different from its model, Title VII, which does not carry a jury right.

First, while the D.C. scheme in some ways resembles Title VII, the remedies differ significantly under the two laws. Compensatory damages, for instance, are not available under Title VII. *See, Walker v. Ford Motor Co.,* 684 F.2d 1355, 1363–64 (11th Cir.1982), and cases cited therein. In contrast, the Human Rights Act explicitly makes compensatory damages a primary remedy for successful litigants. D.C.Code § 1–2553 (a)(1)(D). And damages are quintessential "legal" remedies. *E.g., Curtis,* 415 U.S. at 197, 94 S.Ct. at 1009; *Quinn v. DiGiulian,* 739 F.2d 637, 645 (D.C.Cir. 1984).

One case decided in the District of Columbia District Court adopted the view urged by defendants. *Abbate v. Hyatt Corp.,* 28 Fair Empl.Prac.Cas. (BNA) 542, 543 (D.D.C.1982). This case preceded the District of Columbia Court of Appeals decision in *Howard University v. Best.* By upholding the right to a jury trial under the Human Rights statute, the *Best* court implicitly determined that money damages contemplated by the statute are not ancillary to equitable relief but a legal remedy. This has always been the majority viewpoint, and it is one that this Court now may not question. *See, e.g., Thompson v. International Association of Machinists and Aerospace Workers,* 614 F.Supp. 1002, 1010 (D.D.C.1985); *Turgeon v. Howard University,* 571 F.Supp. 679, 680; *Goodman v. Washington Radio, Inc.,* 38 Fair. Empl. Prac. Cas. (BNA) 948, 949 (D.D.C. 1982). Consequently, this Court will deny defendants' motion.

### PLAINTIFF MAY CLAIM PUNITIVE DAMAGES.

██ Defendants have moved to strike plaintiff's claim for punitive damages on the grounds that the District of Columbia Human Rights Act does not authorize puni-

tive awards. This Court cannot grant defendants' motion.

Defendants rely on two recent decisions by Judge Joyce Green of this Court for the proposition that the Act does not contemplate punitive damages awards. This reliance is misplaced. *Eller v. Houston's Restaurants, Inc.,* does not hold that punitive damages are unavailable under the D.C. Act but that the damages sought by plaintiff were denominated "compensatory" by the Act. 35 Fair Empl.Prac.Cas. (BNA) 1801, 1802 (D.D.C.1984). Defendants are equally wrong to paint *Thompson v. International Association of Machinists and Aerospace Workers,* 614 F.Supp. 1002 (D.D.C.1985), a thoroughly reasoned rejection of punitive damages under the Act. In *Thompson,* Judge Green rejected a post-judgment attack by noting that the punitive damage award was not related to the plaintiff's claim under the Human Rights Act.[3]

In contrast to these murky holdings, other judges of this Court have found that the Act authorizes punitive damages. *McCormick v. District of Columbia,* 554 F.Supp. 640 (D.D.C.1982); *Abbate v. Hyatt Corp.,* 28 Fair Empl.Prac.Cas. (BNA) 542 (D.D.C. 1982). Moreover, while the District of Columbia Court of Appeals has not yet addressed the question, a local trial court held punitive damages an "important tool" for achieving the Act's objectives and found them authorized by the Act. *Zaytoun v. Embassy Row Hotel, Inc.,* No. 6744–83, slip op. at 61, (D.C.Super.Ct. June 21, 1985), *appeal dismissed* (Ct. of Apps. Oct. 9, 1986). While this Court is not bound by that determination, it must not disregard the local court's viewpoint unless " 'convinced by other persuasive data that the highest court of the [District] would decide otherwise.' " *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886

---

3. Defendants maintain that the remedies available under the Human Rights Act are "strik-ing[ly] similar" to Title VII remedies and suggest that *Eller* and *Thompson* found the D.C. and federal remedies congruent. Accordingly, they argue that the Court should interpret the D.C. law, like Title VII, to bar punitive damages. *See, Defendants' Reply to Plaintiff's Oppositions* 20–21. As discussed above, the clear language of the statute demonstrates that the remedies are not congruent. *See supra* at p. 1366.

(1967) (*quoting West v. American Telephone and Telegraph, Inc.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)).

The language of the Human Rights Act clearly supports plaintiff's contention that the Act contemplates award of punitive damages. First, the Act expressly states that a court faced with a private cause of action under the Act "may grant such relief as it deems appropriate, including *but not limited to,* such relief as is provided in § 1–2553(a)," the section of the Act concerning, *inter alia,* compensatory damages. D.C.Code § 1–2556(b) (emphasis added). Accordingly, the Act does not limit a court to the remedies set forth under § 1–2553(a). *See, Coleman v. American Broadcasting Companies,* 38 Empl.Prac. Dec. (CCH) ¶ 35,797 at 40,610 (D.D.C.1985).

Thus, this Court does not believe that the District of Columbia Court of Appeals would disagree with *Zaytoun* and deny punitive damages under the Human Rights Act. As such, the Court will not strike the punitive damages claim.

## THE COURT WILL GRANT PLAINTIFF'S MOTION TO AMEND HER COMPLAINT.

Plaintiff has moved to amend her complaint to add, *inter alia,* a claim of discrimination based on sexual preference in violation of the District of Columbia Human Rights Act of 1977. Defendants object only to the addition of a new discrimination claim.

Fed.R.Civ.P. 15(a) states that leave of the Court to amend a pleading "shall be freely given when justice so requires." This liberal standard requires a Court to balance several factors when deciding whether to grant leave to amend:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previ-

ously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also, Doe v. McMillan,* 566 F.2d 713, 720 (D.C. Cir.), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1977).

Defendants argue that plaintiff is guilty of undue delay in attempting to amend her complaint because she was aware of the facts underlying her claim before she filed this lawsuit. *Defendants' Partial Opposition to Motion for Leave to Amend the Complaint* 3–6. But the rule is that delay alone, absent prejudice to the party opposing the amendment, is insufficient to bar an amendment to the pleadings. 6 *Federal Practice and Procedure* at § 1488; *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 938 (3rd Cir.1984) (per curiam), *cert. denied,* 469 U.S. 981, 105 S.Ct. 221, 83 L.Ed.2d 150 (1985); *Securities and Exchange Commission v. National Student Marketing Corp.,* 73 F.R.D. 444, 447 (D.D.C.1977). Delay is certainly an inadequate reason to prevent amendment when, as here, defendants were previously well acquainted with the proposed claim. *Id.* at 448.

Prejudice to the opposing party is the primary basis for denying a motion to amend the pleadings. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); 6 *Federal Practice and Procedure:* Civil at § 1487. As defendants, who admit to longstanding knowledge of the claim plaintiff seeks to add, do not contend that amendment would prejudice their case, their claim of undue delay does not persuade this Court to deny the motion to amend the complaint.

Defendants also argue that leave to amend should be denied because the amended claim would be subject to a motion to dismiss. If a claim is "patently frivolous," and therefore unquestionably

subject to a motion to dismiss, a court need not grant leave to amend it. *See, e.g., District of Columbia Podiatry Society v. District of Columbia,* 407 F.Supp. 1259, 1269 (D.D.C.1975).

Defendants suggest that the evidence they have so far developed shows that plaintiff could not prove that defendants discriminated against her because of her sexual preference. For all the Court knows, that may be true. But the only issue in a motion to dismiss is whether the *allegations of the complaint,* which must be taken as true and liberally construed, state a claim for which this Court may grant relief. 5 *Federal Practice and Procedure:* Civil at § 1356 (1969 and Supp. 1986). The Court cannot say that, as a matter of law, plaintiff's allegations of mistreatment because of her sexual preference would necessarily fail to make out a claim for discrimination under the District of Columbia Human Rights Act. D.C.Code § 1–2512(a) (illegal to discriminate on the basis of sexual orientation). In consequence, the Court knows no reason why it should not grant plaintiff leave to amend her complaint, and it will grant that motion.

### CONCLUSION

The Court will today grant defendants' motion for summary judgment on plaintiff's claim of intentional infliction of emotional distress, deny defendants' motions to strike plaintiff's demand for a jury trial and for punitive damages, and grant plaintiff's motion to amend her complaint. The Court will issue an Order, of even date herewith, memorializing these rulings.