Herbert J. AMONS, Jr., Plaintiff,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

No. CIV.A.01–2056(RBW).

United States District Court,
District of Columbia.

Oct. 31, 2002.

Lisa Alexis Jones, Washington, DC, for plaintiff.

Michael Alan Stern, Michelle A. Arcari, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

WALTON, District Judge.

### I. Factual Background [1]

On September 27, 2000, several police officers assigned to the Metropolitan Po-

---

**1.** Plaintiff filed his original complaint on September 28, 2001. The District of Columbia filed its motion to dismiss on February 26, 2002. After filing his opposition to this mo-

lice Department's Fifth District allegedly entered plaintiff's home, located in the Northeast section of the District of Columbia, and conducted a search without his permission. Am. Compl. ¶¶ 10–11.[2] During the course of this search, Officer Dunlap shot and killed plaintiff's dog, Shadow Dancer. *Id.* ¶ 12. Plaintiff was arrested and taken to the "lock-up" area of the District of Columbia courthouse where he was confined for twenty-two hours with the general prisoner population. *Id.* ¶ 13. Subsequently, plaintiff was charged with the District of Columbia Code offense of threats to injure a person, which was dismissed by the Superior Court of the District of Columbia on October 19, 2000. *Id.* On May 4, 2001, a criminal information was filed against plaintiff, which charged him with "Attempted Carrying a Pistol Without a License, misdemeanor Threats, and Possession of an Unregistered Firearm and Ammunition." *Id.* However, on

August 30, 2001, the government agreed to dismiss the information after the expiration of 12 months if plaintiff complied with "several conditions, including avoiding violation of any law or rearrest based upon probable cause." *Id.*[3]

Plaintiff has filed a seven count amended complaint against the District of Columbia ("the District") and the police officers in their official capacities: Count I is brought pursuant to 42 U.S.C. § 1983 for false arrest; Count II is an action under § 1983 for deprivation of property without due process of law; Count III is a § 1983 action against the District on the theory of municipal liability; Count· IV is a claim against the District for its alleged negligent hiring, training and supervision of its employees; Count V is a claim for intentional infliction of emotional distress brought against the District; Count VI is a claim filed against all defendants for mali-

tion, plaintiff requested and was granted leave to file an amended complaint, which he filed on May 29, 2002. Thereafter, defendant filed a Supplemental Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and a Motion for Partial Summary Judgment on July 16, 2002, which plaintiff also opposes.

2. References to "Compl." are to plaintiff's originally filed complaint filed on September 28, 2001. References to "Am. Compl." are to plaintiff's amended complaint that was filed on May 29, 2002, which did not alter the substantive allegations of the originally filed complaint, but named as defendants the individual police officers whom plaintiff seeks to sue in their official capacities. The amended complaint also omits count two from the original complaint that alleged a violation of 42 U.S.C. § 1983 resulting from defendant's purported deprivation of plaintiff's "right of freedom from malicious prosecution." To the extent that defendant's original motion to dismiss was directed to count two of plaintiff's original complaint, that count is now deemed excluded from the relief plaintiff seeks and the motion as to that count is now moot.

3. In its reply, the District of Columbia alleges that plaintiff has misrepresented the status of his criminal case. Defendant states that plaintiff was originally charged with felony threats and this charge was later reduced to misdemeanor threats. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.'s Reply") at 2 n. 1. In addition, defendant states that, at the time of the filing of its reply, the government had not entered a *nolle prosequi* in the criminal case. *Id.* Rather, the District points out that plaintiff entered into a "Stet Docket Agreement" with the government "wherein plaintiff agreed to abide by an itemized list of demands, including a stay-away from the complainant and to refrain from possessing any firearms." *Id.* Thus, defendant notes that it is only if plaintiff abides by the conditions set forth in the agreement for a period of one year that the United States would then enter a *nolle prosequi.* *Id.* Nothing in the record currently before the Court indicates whether plaintiff's criminal case has now been dismissed by the United States government.

cious prosecution;[4] and Count VII is a claim against all defendants for false arrest.

The District has filed a motion to dismiss all counts of plaintiff's amended complaint. First, the District argues that Counts I and VII should be dismissed on the grounds that there was probable cause for plaintiff's arrest or because the officers who made the arrest reasonably believed that plaintiff's arrest was lawful. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and Motion for Partial Summary Judgment ("Def.'s Supp. Reply") at 5–6. In the alternative, the District contends that plaintiff's false arrest counts should be dismissed for his failure to state a claim for municipal liability for which relief can be granted. *Id.* at 5. Second, the District argues that Counts II and III should be dismissed due to plaintiff's failure to state a claim for municipal liability upon which relief can be granted and, pertaining to Count III, because there is no underlying constitutional violation as Counts I and II failed to state actionable claims. *Id.* Next, the District argues that Count IV should be dismissed as "redundant and irrelevant" based upon the doctrine enunciated in *Hackett v. Washington Metro. Area Transit Auth.*, 736 F.Supp. 8 (D.D.C.1990) and based upon this Court's order granting the parties' consent motion to bifurcate any surviving municipality claims since the District has agreed to indemnify the named officers. *Id.* at 6. Finally, the District argues that it should be granted summary judgment on Count V, plaintiff's claim for intentional infliction of emotional distress, because the officers acted in a lawful manner and therefore did not "exceed[ ] the bounds of decency." *Id.*

In opposition, plaintiff argues that he has alleged sufficient facts to sustain his claims at this stage of the proceedings, since all that is required in the complaint is a short statement of his claims sufficient to provide the defendant with notice.

## II. Standard of Review

A preliminary matter this Court must address is the defendant's attempt to convert its Motion to Dismiss [# 7] into a partial motion for summary judgment [# 18]. Defendant originally filed its motion to dismiss on February 26, 2002, to which plaintiff filed an opposition on March 28, 2002. In the defendant's reply to plaintiff's opposition, it attached several documents[5] for the Court's consideration. Plaintiff filed an amended complaint on May 29, 2002, and the Court conducted a status conference in this matter on May 31, 2002, at which time it authorized the

---

4. Plaintiff withdrew this count of his complaint in his opposition to defendant's supplement to its motion to dismiss. *See* Plaintiff's Opposition to Defendant District of Columbia's Supplemental Motion to Dismiss ("Pl.'s Supp. Opp") at 14 n. 3.

5. The only documents of a factual nature that were attached to defendant's reply were certified portions of plaintiff's Superior Court criminal case file. Consideration of these documents alone would not necessarily convert the motion into one for summary judgment as "the court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."

*Baker v. Henderson,* 150 F.Supp.2d 13, 15 (D.D.C.2001) (citations omitted); *Dupree v. Jefferson,* 666 F.2d 606, 608 n. 1 (D.C.Cir. 1981) (court took judicial notice of the record in a related civil case "pursuant to [its] authority to judicially notice related proceedings in other courts.") (citations omitted). Therefore, aside from the fact that no notice was provided earlier that the District intended to treat its motion as one for partial summary judgment, the District's assertion that attaching a certified copy of the criminal case to the reply converted its motion to dismiss into a motion for summary judgment (Def.'s Supp. at 2) is not necessarily accurate.

District to file a supplemental pleading to address any new issues raised by plaintiff's amended complaint. The District filed its Supplemental Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss and Motion for Partial Summary Judgment ("Def.'s Supp.") on July 16, 2002, seeking summary judgment on plaintiff's claims of malicious prosecution, false arrest and intentional infliction of emotional distress, to which it attached a statement of undisputed facts and the declaration of Officer Scott Emmons. Def.'s Supp. at 2.

■ Despite defendant's attempt to unilaterally convert its previously filed motion to dismiss into one for partial summary judgment, doing so only after it had already filed its reply to plaintiff's opposition to its dismissal motion, the Court concludes that the timing of the attempted conversion coupled with the lack of prior notice to the plaintiff from the Court compels it to consider the defendant's pleadings as solely a motion for dismissal pursuant to Federal Rule of Procedure 12(b)(6).[6] When considering a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). Thus, in the absence of notice from the Court to the parties stating its intention to convert a defendant's motion to dismiss into one for summary judgment, the Court must analyze the defendant's challenge to a plaintiff's complaint as a motion to dismiss, despite the defendant's attempt to achieve a Rule 56 conversion. *See Gordon v. National Youth Work Alliance,* 675 F.2d 356, 361 (D.C.Cir.1982) ("Under ... Rule

12(b)(6), a court need not consider matters outside the pleadings at all. But once it decides to consult such matters it should so inform the parties and set a schedule for submitting additional affidavits and documents if the parties wish."); *Baker v. Henderson,* 150 F.Supp.2d 13, 16 (D.D.C. 2001) ("When a district court converts a Rule 12(b)(6) motion to one for summary judgment, it must allow all parties a reasonable opportunity to present all material made pertinent to such a motion by Rule 56, and a chance to pursue reasonable discovery.") (citing *Taylor v. Federal Deposit Ins. Corp.,* 132 F.3d 753 (D.C.Cir. 1997)). Accordingly, the District's attempt to convert its motion to dismiss into a partial summary judgment motion must be rejected.

To survive a motion to dismiss that is brought under Rule 12(b)(6), a complaint need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citing Fed.R.Civ.P. 8(a)). And, when reviewing a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Thus, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

### III. Analysis

#### A. *Plaintiff's § 1983 Claims*

Defendant makes several arguments regarding plaintiff's claims brought pursuant

---

6. Although the District indicates that it is also seeking dismissal under Rule 12(b)(1), it is actually only seeking dismissal under Rule 12(b)(6).

to 42 U.S.C. § 1983. First, defendant argues that "a § 1983 complaint must allege that an established municipal policy or custom caused the constitutional violation at issue." Def.'s Supp. at 4. Defendant argues that Counts I through III fail to allege such a policy or custom. In support of this argument, defendant relies upon *Miller v. Barry*, 698 F.2d 1259 (D.C.Cir. 1983). In *Miller*, the court held that the plaintiff's allegation that the police officer against whom he had filed suit "was acting fully within the scope of his employment and pursuant to the polices of defendant . . ." was not "specific enough to withstand dismissal." *Id.* at 1261. The *Miller* court noted that "[p]etitioner pointed to no rule, procedure or policy of the District which would require or even permit the alleged unconstitutional actions. In other words, he failed to allege that his claimed constitutional harm was caused by a 'policy statement, ordinance, regulation, or decision promulgated or adopted by [defendants].'" (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

█ In this case, plaintiff's complaint alleges that the "Defendant District of Columbia is liable for plaintiff's injuries because [it] has tolerated and permitted a pattern of police harassment, false arrest and malicious prosecution . . ." Am. Compl. ¶ 1. Further, plaintiff contends that "[p]rior to and including the date of the incident, the District of Columbia, through its Metropolitan Police Department, permitted and tolerated a pattern and practice of unjustified, unreasonable, and unlawful harassment and deprivation of liberty and property without due process of law." *Id.* ¶ 28. And, he alleges that "policies and customs of the District of Columbia Metropolitan Police have caused officers of the District to believe that . . . misconduct would not be aggressively,

honestly and properly investigated, with the foreseeable result being that police officers are more likely to harass and deprive citizens of liberty and property without due process of law." *Id.* ¶ 30. These allegations are sufficient. Defendant argues that the complaint fails to "set forth any factual allegations to support its legal conclusions." Def's Supp. at 5. However, this requirement would enlarge the proper standard that plaintiff must meet to withstand the defendant's motion to dismiss. For example, the District of Columbia Circuit held in *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996), that the plaintiff's complaint, which alleged that the District of Columbia failed to train and supervise its officers in the use of deadly force, was sufficient to survive a motion to dismiss.

In *Atchinson*, the plaintiff was walking down the street carrying a machete when he heard someone yell "freeze." *Id.* at 419. Turning around, the plaintiff saw two uniformed police officers standing across the street and, without any further verbal warning from the officers, one of the officers shot plaintiff in his abdomen. *Id.* Plaintiff filed a § 1983 action against the officers and city officials, which was dismissed by the district court for failing to "identify a specific custom, policy statement, or procedure that caused [plaintiff's] injuries." *Id.* at 422. In reversing the district court's dismissal of Atchinson's complaint, the circuit court stated that "Atchinson did allege both a failure to train and an instance of official use of excessive force." *Id.* The court went on to state that "[f]airly read, therefore, the complaint alleges a failure to train in the use of force." *Id.* In reaching this conclusion, the court looked to the factual allegations of the complaint, which included the fact that the officer shot plaintiff

in broad daylight on a city street so quickly after Atchinson was ordered to

'freeze' [,which the court held] state[d] facts that may reasonably suggest misconduct sufficiently serious and obvious to justify an allegation of improper training in the use of force. Atchinson, of course, will need to *prove* more about the District's police training to prevail on the merits.

*Id.*

Likewise, the Court finds that the allegations in the complaint in this case are sufficient to provide notice to the defendant of plaintiff's claim that the District has allegedly condoned a policy of harassment and false arrests and has, in effect, ratified this conduct through improper investigations of police misconduct or by tolerating such conduct through its inaction. *See Daskalea v. District of Columbia,* 227 F.3d 433, 441 (D.C.Cir.2000) ("a city's inaction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain.") (citations omitted). Thus, when gleamed through the lens of the liberal viewpoint that complaints must be evaluated when challenged on Rule 12(b)(6) grounds, the complaint here can be fairly said to allege that plaintiff was subjected to a false arrest as a result of the District's policy of condoning and ratifying the unlawful conduct of its police officers. *See Atchinson,* 73 F.3d at 423–24 ("we think it is possible for a section 1983 plaintiff to satisfy Rule 8 by alleging both a failure to train and an unusually serious instance of misconduct that, on its face, raises doubts about a municipality's training policies."). *Cf. Dant v. District of Columbia,* 829 F.2d 69, 77 (D.C.Cir.1987) (holding that complaint that failed to allege that plaintiff was "subjected to malicious prosecution and abuse of process pursuant to an established [municipal] policy or practice[,]" was insufficient

to withstand dismissal.) (emphasis added). Although plaintiff will need to present evidence to prove what he has alleged in his complaint to survive summary judgment or to prevail at trial, at this stage the Court concludes that the complaint meets the pleading standards as established by Rule 8 and the Court will not dismiss counts I, II, or III of the complaint based upon the District's first challenge to these claims.

■ Defendant's next argument regarding plaintiff's § 1983 claims is that plaintiff fails to name a defendant with policymaking authority. Def.'s Supp. at 7. It is true that under section 1983 "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. Defendant relies on *Triplett v. District of Columbia,* 108 F.3d 1450, 1454 (D.C.Cir.1997) for the proposition that plaintiff must name an official with policymaking authority to avoid dismissal of his § 1983 claims. However, *Triplett* does not support the District's argument. In *Triplett,* the plaintiff sought to establish a claim of municipal liability pursuant to § 1983 on the part of the District of Columbia by arguing that the District condoned the use of excessive force by its correctional officers. *Id.* at 1453. According to the testimony of a former correctional officer, "supervisory officers knew of the use of excessive force and had covered up the activity." *Id.* In reversing the plaintiff's award on his § 1983 claim, the circuit court did hold that there was "no one in this case's cast of characters who could possibly be said to hold 'final policymaking authority' regarding the use of force in restraining prisoners." *Id.* But, *Triplett* does not stand for the proposition that a plaintiff, at the pleading stage, must name a policymaking official in his complaint because the complaint "need not

allege all that a plaintiff must eventually prove." *Atchinson*, 73 F.3d at 422. Thus the Court concludes that dismissal for plaintiff's failure to name a person in a policy-making position as bearing some culpability for what happened to him as alleged in his complaint would be inappropriate.

Defendant's final argument that one incident of police misconduct is insufficient to support a § 1983 claim must also be rejected. In *Atchinson*, the Circuit Court rejected such an argument, holding that "Atchinson's complaint is adequate even though it alleges only one instance of unconstitutional conduct." 73 F.3d at 423. And the court construed the Supreme Court's ruling in *Leatherman* to be "inconsistent" with "a multiple-incident pleading requirement ..." *Id.* Indeed, the *Atchinson* court noted that "section 1983 does not require a plaintiff ... to prove multiple instances of misconduct if the plaintiff can prove an unconstitutional municipal policy responsible for a single instance of misconduct." *Id.* (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

For these reasons, the Court holds that plaintiff's § 1983 claims should not be dismissed.

### B. *Plaintiff's Claim for Negligent Supervision*

Defendant next argues that plaintiff's claim of negligent supervision should be dismissed as redundant because the District of Columbia has conceded the applicability of the doctrine of *respondeat superior*. Def.'s Supp. at 8. Defendant relies heavily on the case of *Hackett v. Washington Metro. Area Transit Auth.*, 736 F.Supp. 8 (D.D.C.1990), wherein the court held, in a personal injury case, that where the employer conceded that the employee was working within the scope of his employment when he collided with the plain-

tiff's car, the plaintiff's claims for negligent hiring, supervision and retention would not impose any additional liability on the defendant and "would be prejudicial and unnecessary." *Id.* at 11. However, the "gravamen" of the issue in *Hackett* was the admissibility of the defendant employee's driving record, which the court concluded would have been admissible regarding the negligent entrustment claim but not on the *respondeat superior* claim. The defendant argued that permitting the plaintiff to proceed on both alternative theories of liability would be "unfairly prejudicial to the defendant[,]" *id.* at 9, a position accepted by the court.

 Here, the District fails to advance how it would be prejudiced by permitting plaintiff to pursue his claim of negligent supervision. As the § 1983 claims may not be premised on the theory of *respondent superior, Monell*, 436 U.S. at 691, 98 S.Ct. 2018, it is not clear how the negligent supervision claim is redundant or duplicative of plaintiff's other claims. Moreover, it is clear that a plaintiff may recover for a claim of negligent supervision in addition to a § 1983 claim. *See Daskalea*, 227 F.3d at 444–45 (upholding plaintiff's jury award on her § 1983 and negligent supervision claims against the District). Therefore, plaintiff's claim for negligent supervision will not be dismissed at this stage of the proceedings, in the absence of a showing that the District will somehow be prejudiced if plaintiff is permitted to pursue this claim.

### C. *Plaintiff's Claim for False Arrest*

 Where, as here, a false arrest claim is based on a warrantless arrest, the defendants must establish that there was probable cause to make the arrest. *Wardlaw v. Pickett*, 1 F.3d 1297, 1304 (D.C.Cir. 1993) (citation omitted). " 'Under District of Columbia law, a police officer may justify an arrest by demonstrating that (1) he

or she believed, in good faith, that his or her conduct was lawful, and (2) this belief was reasonable.' " *Weishapl v. Sowers,* 771 A.2d 1014, 1020 (D.C.2001) (citation omitted). The defendant can defeat a false arrest claim "if the officer can demonstrate that he had a good faith belief that his conduct was lawful and that such belief was reasonable." *Id.* (citations omitted). The District contends that plaintiff's false arrest claim should be summarily dismissed because the arresting officers had probable cause to arrest plaintiff. The District asserts that the arresting officers' probable cause to arrest plaintiff stemmed from the fact that the arresting officers had received a radio broadcast which related that the defendant had committed a felony threat against another person. However, plaintiff, in his opposition, argues that the officers did not have probable cause because they failed to question him about the alleged felony threat and because the Superior Court Judge that presided over his preliminary hearing found no probable cause for the arrest and consequently dismissed the case.

The Court concludes that the allegations, as set forth in the complaint, could sustain a finding that the officers did not have probable cause to arrest plaintiff. Plaintiff alleges that he was in his home when the police officers "entered his home without Plaintiff's consent." Am. Compl. ¶ 10. In addition, he states that he was arrested "without probable cause or legal justification ..." *Id.* ¶ 18. These allegations standing alone are sufficient to assert a false arrest claim. The District's argument that there was probable cause to arrest is supported by the declaration of one of the arresting officers which, for the reasons stated above, the Court will not consider at this time given the standard of review that governs Rule 12(b)(6) motions. Thus, the Court concludes that plaintiff's false arrest claim is sufficient to withstand the District's dismissal motion.

**D. Plaintiff's Claim for Intentional Infliction of Emotional Distress**

To establish the tort of intentional infliction of emotional distress under District of Columbia law, in the absence of physical injury, plaintiff must demonstrate "(1) 'extreme and outrageous' conduct on the part of the defendant, which (2) intentionally or recklessly, (3) causes plaintiff 'severe emotional distress.' " *Abourezk v. New York Airlines, Inc.,* 895 F.2d 1456, 1458 (D.C.Cir.1990); *Green v. American Broadcasting Companies,* 647 F.Supp. 1359, 1362 (D.D.C.1986); *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C. 1982). After plaintiff presents evidence to support his claim for intentional infliction of emotional distress, "it is the job of the trial court, in the first instance, to determine whether the defendant's conduct may be regarded as so outrageous as to permit recovery." *Abourezk,* 895 F.2d at 1458.

In *Abourezk,* the District of Columbia Circuit Court had to decide whether the actions of a New York Airlines pilot, who failed to permit the plaintiff to exit an airliner despite three requests, was the kind of outrageous behavior needed to establish a claim for intentional infliction of emotional distress. The court determined that in assessing the outrageousness of the conduct at issue, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Abourezk,* 895 F.2d at 1459. Consequently, even after drawing all reasonable inferences in plaintiff's favor, the court concluded that the airline pilot's detention of the plaintiff for over three hours did not rise to the level of extreme and outrageous conduct. *Id.* at 1459. The circuit court therefore affirmed the grant of summary judgment concluding that no reasonable juror could find liability.

The District relies on *Rogala v. District of Columbia*, 161 F.3d 44 (D.C.Cir.1998) for the proposition that the conduct alleged by plaintiff in this case cannot establish a claim for intentional infliction of emotional distress. In *Rogala*, the court had to decide whether a police officer acted outrageously by, in part, repeatedly threatening plaintiff with arrest, laughing at plaintiff's hearing impairment, and detaining her for over three hours. *Id.* at 57. After reviewing plaintiff's testimony and that of her doctor, the court determined that the police officer's conduct did not rise to the level of egregiousness necessary to sustain a claim for intentional infliction of emotional distress and summarily affirmed the findings of the district court. *Id.*

■ Plaintiff's complaint in this case alleges that the police officers unlawfully entered and searched his home without justification, that the police officers killed his pet dog in his home and that they detained him for twenty-two hours. In addition, he alleges that the police officers failed to secure his home after his arrest causing the loss of his property valued in excess of $6,000. Applying the standards adopted by *Abourezk* and *Rogala*, and viewing all the evidence in a light most favorable to plaintiff, as well as affording him the benefit of every reasonable inference, the Court concludes, based on the allegations in the complaint, that plaintiff has sufficiently set forth a claim for intentional infliction of emotional distress. The complaint raises an issue as to whether the police officers acted intentionally in a manner that was "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency." *Abourezk*, 895 F.2d at 1459. For example, plaintiff alleges that an officer intentionally shot his dog without provocation and that he was locked up with the general prisoner population for twenty-two hours.[7] As stated in *Rogala*, a claim for intentional infliction of emotional distress "may be maintained against an arresting officer if . . . he made an egregiously unlawful arrest." 161 F.3d at 58 (citation omitted). Because there is insufficient information in the record to determine whether there was probable cause to arrest plaintiff and because the Court concludes that the behavior alleged by plaintiff is by far more outrageous than the refusal to permit an airline passenger the right to exit an aircraft (*Abourezk*) or the detaining of a car passenger pending an automobile stop, (*Rogala*), the Court will not dismiss plaintiff's claim at this time.[8]

## IV. Conclusion

Because the Court must liberally construe the allegations of plaintiff's complaint, it finds that plaintiff has alleged sufficient facts to withstand dismissal of his claims. Therefore, the Court denies the District's motion to dismiss plaintiff's complaint.

### ORDER

This matter was before the Court on Defendant's Motion to Dismiss [# 7] and Motion for Partial Summary Judgment [# 18]. For the reasons set forth in the Memorandum Opinion that accompanies this order, it is hereby

**ORDERED** that defendant's motions are denied. It is further

---

**7.** This allegation, the Court notes, would only be sufficient if plaintiff is indeed able to sustain his false arrest claim.

**8.** Since the Court concludes that plaintiff's claims should not be dismissed at this stage of

the proceedings, it need not address defendant's argument that the Court should not exercise supplemental jurisdiction over plaintiff's common law claims.

**ORDERED** that Count IV of plaintiff's complaint is hereby dismissed without prejudice.